STEBBINS, BROWER AND COMPANY v. PETER WALKER.

The sheriff has right to pay money raised on execution, to the party, out of court, but when conflicting claims are set up to the money, the sheriff has a right to exonerate himself by bringing the money into the court.

This court have the right, whenever application is made for that purpose, and a proper case stated, to compel the sheriff to bring the money into court, and when brought in, to dispose of it according to law. This is the right of the court, and it seems essential to the full and fair administration of justice, that the court should exercise a control over its ministerial officers, and its own process, and in so doing, secure to suitors the lawful fruits of their executions.

If a party stands by and permits an officer, acting in good faith, to pay money by mistake, to an execution creditor, who is not entitled to it, such party should be left to his legal remedy, and ought not to invoke the summary aid of this court.

This court lawfully may, and ought, under certain circumstances to exercise a control over surplus money in the hands of the sheriff ; and he cannot oust the court of their right by improperly parting with the money, after notice.

Judgments and executions are incumbrances and liens, which fasten upon a man's property ; and they will hold on to and pursue that property, till it has been fairly exhausted in payment of debts. If there has been a levy upon lands or goods, though a sale under a prior execution will pass the title to the property, it will not divest the equitable lien of the second execution on the surplus money, if any. The court out of which the process issues, can and will protect this equitable right

Stebbins, &c. *v.* Walker.

of the suitor, and order the surplus to be brought into court, and applied towards satisfaction of the execution next in priority.

The case of *Thompson* v. *Pierson*, 2 *Penn. Rep.* 1019, overruled.

Russell Stebbins, John Brower, and Jacob Brower, obtained a judgment in this court, against Peter Walker, upon which judgment an execution was issued, directed to Jacob K. Mead, then the sheriff of the county of Essex. The property of the defendant was sold, and the judgment of the plaintiffs was satisfied, leaving in the hands of the sheriff, surplus money. At the November term, 1832, *Aaron S. Pennington,* as attorney for William Dow, esquire, and James Richards, applied to the court for a rule on sheriff Mead; when the following order was made and entered on the minutes of the court, "It is ordered by the court, that Jacob K. Mead, esquire, late sheriff of the county of Essex, pay into this court, by the first day of next term, the surplus money raised by him under the execution in the above stated cause, after paying the above judgment of Stebbins, Brower and Co., or that cause be shewn to the contrary. And it is further ordered, that cause be shewn at the same time, why the moneys, if paid in or ordered to be paid in, should not be paid to William Dow, esquire, sheriff of the county of Essex, to be applied by him to the payment and satisfaction of two executions, one in favor of John McIntyre, and the other in favor of James Richards, against the said Peter Walker, or to the payment of such one of them, and in such manner as the court may direct. And it is further ordered, that the parties have leave to take affidavits and proofs, to be used on any argument arising under this rule."

At the last May term, *A. S. Pennington* and *E. Vanarsdalen,* argued in support of the rule, and *E. B. D. Ogden* and *I. H. Williamson,* contra.

At this term, the opinion of the court was delivered by

HORNBLOWER, C. J. In November term, 1832, a rule was granted, on motion, in behalf of William Dow, sheriff of Essex county, and James Richards, a plaintiff in execution, against Peter Walker, that Jacob K. Mead, late sheriff, &c. pay into this court, certain surplus money, raised by him, on execution

against the said Walker, at the suit of Stebbins, Brower, & Co. or shew cause to the contrary: and further, that cause be shewn why the said moneys, if paid in, or ordered to be paid in, should not be applied to the satisfaction of certain executions, &c.: and leave was given to take affidavits, &c.

In May term last, the motion to make that rule absolute, in both of its branches, and for directions, &c. was argued so elaborately and with so much earnestness and ability, by counsel on both sides, as to demand of this court a very deliberate and solemn decision on the several points that were raised and discussed.

As not only the power of this court over surplus money, but its right to settle priorities, between contending execution cred itors, and to direct the application of moneys raised under its process, have been debated and seriously questioned by counsel, I have felt it my duty to give to the subject all the consideration in my power.

It would seem to be taking broad ground, to deny to the court, the power of compelling a sheriff to bring the money he has raised on execution, into court. This would be to deny to the court, the right and the power to compel obedience to the express command of their own writ: for by the execution, the sheriff is commanded to have the money in court on a certain day, to render to the plaintiff for his debt or damages, and costs. And so imperative, was this command formerly considered, that Ld. Ch. Baron Gilbert, in his law of executions, page 16, says: "No payment to the party, will discharge the sheriff's power by the writ: because he is commanded by the writ, to have the money in court, there *publicly* to pay the party: which cannot be superseded by any private agreement between the parties." And he afterwards adds, "If the sheriff levy the money on defendant, and delivers it to the plaintiff, *unless it be paid into court*, the plaintiff has his choice of a new execution, or of a distringas, &c. against the sheriff." This strictness, was afterwards relaxed, and it was held that the sheriff might pay the money to the party. *Rex* v. *Bird*, 2 *Show.* 87 ; *Fulwood's case*, 4 *Co.* 64 ; *Hoe's case*, 5 *Co.* 90, *a ;* 2 *Bac. abr. tit. Execut.* 710. But whenever the practice commenced, of permitting the sheriff to pay over the money, directly to the plaintiff, it was

*a permissive* departure from the command of the writ.　2 *Bac. abr. tit. Execut.* 716 ; 3 *Lev.* 203, 204 : *Turner* v. *Fendall*, 1 *Cranch* 116, &c.　And however convenient it may be in practice, yet it is not difficult to discern the wisdom of the old rule, which required the money to be brought into court, and " publicly paid to the party."　The satisfaction of the judgment, thereby became matter of record, and put an end to further disputes on the subject.

The right of the sheriff to pay the money to the party, out of court, is not, at this day, to be questioned ; but, it by no means follows, that the court has lost the power of compelling its officers to obey the command of its process.　I cannot doubt that we have the right, whenever application is made to us for that purpose, and a proper case stated, to compel the sheriff to bring the money into court.　Neither have I any doubt but that the sheriff, whenever he chooses, for his own safety or convenience, instead of paying the money to the party, out of court, may, in obedience to the command of the writ, bring it here, and pay it in court ; such a course would always be safe for the officer ; and while at the bar, I uniformly advised sheriffs, when conflicting claims were set up to money raised by them on execution, to pay it into court ; and take no part in the out door disputes, about the right to the money.　Such is still my advice to them.　The receipt of the clerk of this court, is a better bond of indemnity to the sheriff, than any obligation to keep him harmless, he can get from the parties.　I do not now speak of surplus money, that will be considered hereafter ; but, I speak of the amount due or raised on execution for the plaintiff.　The sheriff then, having a right to exonerate himself, by bringing the money into court ; suppose sheriff Mead, instead of paying the amount due and raised on the Stebbins, Brower and Co. execution to Mr. Degroat, and leaving him to apply it as he pleased, had brought it into court : and suppose sheriff Dow, instead of listening to the conflicting claims of the mortgagees, and judgment creditors, and paying over the money in the manner he did, had also brought the amount raised by him, into court : and if these conflicting claims had then been set up here, as they now are, we must have heard the parties, and determined their priorities ?

It cannot then be, that the right and power of the court, to interfere, depends upon the will of the sheriff.   If we have a right to dispose of the money when the sheriff brings it here voluntarily, we have a right to compel him to bring it here, when conflicting claims are set up to it.   But it is the settled practice of the court.   In *Matthews* v. *Warne,* 6 *Halst. Rep.* 295, this court asserted and exercised the right of postponing a prior execution, issued out of this court in favor of a junior execution, out of the Common Pleas ; and that too, on the ground of fraud. In *Williamson* v. *Johnson,* 7 *Halst.* 86, the money, which by agreement of parties, was considered as in court, was ordered to be paid on the 2d execution.   In this last case, the authority of the court to interfere in this summary way, was questioned, and debated at the bar.   But the court, in answer to that objection, said, " the power had been exercised in very many instances and was settled by a train of decisions."   A still later case is that of *Sterling* v. *Vancleve,* 7 *Halst. Rep.* 285 ; in which the right of the court to settle priorities, was exercised.   It is too late to question the power of the court in this matter.   Nor is there, in my opinion, any just reason to question the expediency of exercising such power.   It seems essential to a full and fair administration of justice, that the court should exercise a control over its ministerial officers, and its own process ; and in so doing, secure to suitors, the lawful fruits of their executions. If the court has not this power, their executions, instead of being " the end of the law," will, in many cases, be the commencement of a new series of suits and litigations.

If the court then, has the right in this summary way, to determine priorities, they must, as incident thereto, have a control over the money, raised on their process ; or else, the right of appropriation is nugatory, and any effort to exercise it, would be in vain.   But if a party stands by, and permits an officer, acting in good faith, to pay money by mistake, to an execution creditor, who is not entitled to it, such party should be left to his legal remedy, and ought not to invoke the summary aid of this court.   But if the conduct of the sheriff, is *mala fides,* or if with his eyes open, after notice, he pays over the money, I would not stop to enquire, whether he can get it back again. On this part of the subject, I will only add, that the Supreme

Court of New York, exercises this power; and as instances refer to the cases of *Adams* v. *Dyer*, 8 *Johns. Rep.* 347, and *Waterman* v. *Rankin*, 11 *Johns. Rep.* 228. So too in South Carolina. *Greenwood* v. *Colcock*, 2 *Bay. Rep.* 67, and see 1 *Keb.* 901.

But the great question in this case is, can, or ought the court to exercise any control over surplus money? The answer to this general question, in my opinion is, that under certain circumstances, the court lawfully may, and ought to do so.

The case of *Armsted* v. *Philpot, Dougl.* 295, has been considered as the basis of the decisions upon this subject; but it seems to me, that a very singular use has been made of that case. It has no application to the question of the power of the court over surplus money. In that case, the sheriff was directed to retain money in his hands which he had raised on execution, for a man to satisfy an execution which had been delivered to him *against* that man. It was neither a case of surplus money, nor yet a question of priority, and if the law of that case had never been questioned, it could have been no authority for or against the application of surplus funds. The next case in order of time, and which has been considered as overruling the one last mentioned, is that of *Fieldhouse* v. *Croft*, 4 *East.* 510, But the case was very different from that of *Armsted* v. *Philpot*, and also from the one before the court. On an execution against the defendant, the sheriff had raised a surplus of 900*l.* There was not before, or at the time of the sale, any other execution extant, affecting the property of the defendant. And in the language of Lord Ellenborough, the sheriff ought immediately to have paid over the surplus to the defendant; but instead of doing so, the sheriff retained it in his hands, until the plaintiff recovered another judgment against the defendant, and sued out execution thereon; and now an application was made to the court, to have his second execution satisfied out of those moneys. It was properly refused; for it came to the simple question, whether a plaintiff can have execution of a debt due the defendant from a third person.

The case of *Knight* v. *Criddle*, 9 *East.* 48, was in principle, precisely like the cases of *Armsted* v. *Philpot*, and *Fieldhouse* v. *Croft;* though the facts were different. Criddle, the defend-

ant, had recovered judgment, and sued out execution against S. H.; in satisfaction of which, S. H. had paid the sheriff 60l. While this money was in the sheriff's hands, Knight recovered a judgment against Criddle, and sued out execution ; and the motion was for a rule on the sheriff, to satisfy Knight's execution, out of the money in the sheriff's hands belonging to Cribble. It was not even surplus money, and the rule was refused, on the ground, that a debt due the defendant, could not be taken in execution.

The next case cited by counsel, is *Willows* v. *Ball*, 5 *Bos. & Pul.* 376. The sheriff had seized the goods of Ball, under a distringas against one Noel. After the seizure, and while the goods were in the hands of the sheriff, Willows lodged a fi. fa. with the sheriff, against Ball—Ball in an action against the sheriff, for taking his goods, recovered damages to the value of them ; and now Willows, sought to have his execution against Ball, satisfied by the sheriff, out of those damages.

The motion was refused, on precisely the same ground as in the other cases. Sir James Mansfield, chief justice, said, " considering the goods as turned into money, and the money to belong to Ball, he could see no distinction between that money, so due from the sheriff to Ball, and any other debt that might be due from the sheriff to him." In short, it came under the facts of the case, to the very same question, whether a debt due to a defendant, might be taken in execution. But Sir James Mansfield added this important remark, " that if Willows had a lien on the goods, that might vary the case."

The only other case cited from the English books, is that of *Padfield* v. *Brine*, 3 *Brod. & Bing.* 294. (*Eng. Com. Law Rep.* 7*th vol.* 443.) The sheriff had raised money on an execution, for Brine, and Padfield wanted to have his execution against Brine satisfied out of that money. The court discharged the rule on the ground that like the other cases I have mentioned, it was a naked attempt to take money in execution, in the hands of a third person.

The silence of the English reports upon the subject of surplus money, may perhaps be owing to the fact, that lands are not sold on execution, and it can seldom happen, that much surplus can arise on the sale of chattels. But the case of *Turner* v.

Stebbins, &c. *v.* Walker.

*Fendall*, in the Supreme court of the United States, 1 *Cranch* 116, is in accordance with the cases I have mentioned from the English books. For though the Supreme Court in that case decided, that money might be levied on, if in the possession of the defendant, yet, that the sheriff could not take money in his own hands belonging to the defendant. But Chief Justice Marshall, by what he said in that case, evidently favored the right of the court to appropriate moneys belonging to a defendant, to the satisfaction of executions against him, as was done in the case of *Armstead* v. *Philpot.* He remarks, that though a sheriff may pay money out of court, where unobstructed by an injunction, yet if he has an execution in his hands against the person to whom the money belongs, " it is the duty of the sheriff, to bring it into court, to be disposed of as the court may direct." " And this," the chief justice adds, " was done in the case of *Armstead* v. *Philpot ; and this ought to be done*, whenever the legal and equitable right to the money is in the person whose goods and chattels are liable to an execution."

Thus far, however, we find no case respecting surplus money, arising on a sheriff's sale of property, which was subject to junior executions. But in New York, the subject has been discussed. In *Ball* v. *Ryers*, very shortly reported, in 3 *Caines Rep.* 84, the Supreme Court of that state, did direct such surplus money to be paid on a second execution. It is true, in that case the counsel cited *Armstead* v. *Philpot*, in support of the rule. But we must presume the court were not influenced by that case ; for even if good law, it had no application to the subject. The next New York case, is that of *Williams* v. *Rogers.* It was cited and relied on, in opposition to the right of the court to interfere with surplus money. But to my mind, so far as we respect the decisions of that court, it is an authority in support of our jurisdiction in the matter. For though in that particular case they denied the motion, yet they expressly admit the right of the court, under other circumstances, to exercise a control over surplus money. The facts in that case were peculiar, and the court said they had no means of ascertaining the relative rights of the parties ; and in the exercise of that sound discretion, which ought always to govern in such cases, *upon the facts presented*, they did not think proper to

interfere either way; but they add, "the court do not say, they will never interfere when the equity of the case can be accurately discerned. If the claims of Coates, were out of the question, it would be unreasonable to require the sheriff to pay the surplus moneys into the hands of the defendant, when he held in his possession a subsequent execution against the property of the defendant, and had no means of satisfying it, but out of those very moneys. The court, it is true, in the case just mentioned, are reported as saying, "that it is now the practice .in the English courts, not to grant such rules, upon the sheriff," and in support of that remark, they cite the cases of *Fieldhouse* v. *Croft; Knight* v. *Kriddle,* and *Willows* v. *Ball.* But with great deference, I beg leave to say, if by *such rules,* they mean rules to bring in *surplus* money, the cases just mentioned, prove no such thing.

The only other New York case cited on the argument, is, *Sandford* v. *Roosa,* 12 *Johns. Rep.* 162. I do not perceive that it has any bearing upon this question. It only decides, that the sheriff must apply the proceeds of his sale to the execution under which he sells; even though it is the youngest execution, and the plaintiff in the first execution must be left to his remedy against the sheriff. The case of *Smallcourt* v. *Buckingham,* 1 *Salk.* 320, is to the same effect.

But the supreme Court of New York, have directly settled the point in the case of *Van Nest* v. *Yeomans,* 1 *Wend. Rep.* 87. The second execution was not delivered to the sheriff until the day of sale, and it rather appears by the report, not till after the sale, and before the surplus was paid over; notice was given to the sheriff, and the court ordered the surplus money to be paid to the second execution creditor. Woodworth, justice, says, " This the court have a right to order; for whilst the avails of the sales remain in the hands of the sheriff, they are subject to the control of the court." And I add, that surely, the sheriff cannot oust the court of their right, by improperly parting with the money after notice.

We now come to the case of *Thompson* v. *Pierson,* decided in this court, and to be found in 2 *Penn. Rep.* 1019. It is a case, directly in point, and if law, fatal to the present application. It is certainly no light matter to overrule or depart from a plain

and unequivocal decision of this court, constituted as it was, when Chief Justice Kirkpatrick, presided; and when he and Mr. Justice Rossell, concurred in that opinion; and it would be, with much greater diffidence I should venture to express my dissent, was I not sustained in such a course by Mr. Justice Pennington, who was then on the bench. It is to be regretted, that we have not been furnished by the reporter, either with the arguments of counsel or the reasoning of the judges who concurred in opinion. Not a single authority is cited, nor a rule or principle of law referred to as the ground of the decision. We are simply told, that they were of opinion, *that this court had no control over surplus money.* Such a decision, on a matter so vital to the administration of justice, so essentially connected with the very end for which courts have been instituted; and I may add, a decision so fatal to the just expectations of suitors, cannot, I think, challenge the confidence of the bar, or of the public, or be considered as concluding and definitively settling the matter. I feel myself constrained, after the most deliberate consideration, to dissent from the proposition, that the court have no control over surplus money. The reasoning of Mr. Justice Pennington, is, to my mind, conclusive, and in addition to what he has said, I feel myself pressed by other considerations. Creditors, however vigilant, cannot proceed *pari passu*, in pursuit of their rights; there must be a *prius*, and a *posterius* in judgments and executions; and a debtor, whose property consists in one entire thing, however valuable, would have it in his power to defeat every execution but the first. Under our statute, *Rev. Laws*, 671, a defendant may elect to have his land first sold under a fi. fa. Suppose then, several executions, all levied in succession, on goods and lands, the aggregate amount may be several thousand dollars, the first execution perhaps less than one hundred dollars; the defendant elects to have his land first sold, it is sold accordingly, and brings its value; shall the sheriff deduct the pittance due on the first execution, and pay over the surplus to the defendant, to the utter disappointment of the subsequent execution creditors; and that too, after their judgments and executions have become liens upon that very land? Yet such would be the result of the doctrine contended for. It may be said, this is arguing *ab inconvenienti;* and from the hard-

Stebbins, &c. v. Walker.

ship of the rule. It is, indeed, difficult to bring one's mind to believe that a rule, so inconvenient, so hard and unjust, can be a lawful one; and I think it is not. Our judgments and executions are not vain and nugatory things; they cannot be turned aside by the devices and ingenuity of defendants; they are incumbrances and liens which fasten upon a man's property; and they will hold on to and pursue that property, till it has been fairly exhausted in payment of debts.

I do not now say, an execution never levied, will constitute a lien on surplus money. I give no opinion as to that, but if there has been a levy upon lands or goods, though a sale under a prior execution will pass the title to the property; it will not divest the *equitable lien* of the second execution on the surplus money, if any. The court out of which the process issues, can and will protect this equitable right of its suitor, and order the surplus to be brought into court, and applied towards satisfaction of the execution next in priority.

It is no wonder, if one who reads the short case of *Thompson* v. *Pierson*, should exclaim, " the glorious uncertainty," and he may add, " inefficiency of the law," when they see an insolvent defendant putting nine hundred dollars in his pocket, a part of the price of his property, and quietly walking off with it, in defiance of his creditors, whose executions have been levied on that very property.

The defendant himself, could not have sold it, so as to protect it from any of his execution creditors, and pocketed the price, or any part of the price; but the doctrine contended for, comes to his aid: *the law sells it for him;* takes out perhaps, a very small part of the price, gives him the surplus and defeats its own process.

I am therefore of opinion, upon principle, upon the reason and nature of things, and in accordance with the decisions in New York, in *Ball* v. *Ryers,* 3 *Canes Rep.* 84, and *Van Nest* v. *Yeomans,* 1 *Wend. Rep.* 87, that the court has control over surplus money arising on a sheriff's sale, if the property at the time of the sale, was subject to, or bound by subsequent judgments and executions. I feel myself sustained in this opinion by what was said by the Supreme Court of the United States, in *Turner* v. *Fendall,* 1 *Cranch,* 116, &c.; by the remarks of the Supreme

Court of New York, in *Williams* v. *Rogers*, 5 *Johns. Rep.* 163; and by the observation of Sir James Mansfield, in *Willows* v. *Ball*, 5 *Bos. & Pul.* 376.

If the rights and equities of the parties are complicated, and fit only to be settled in a court of chancery, I would, at least, as suggested by Sir James Mansfield, in the case last mentioned, direct the money to be brought and retained here, till the party had an opportunity to apply to that court.

I am therefore of opinion that the rule in this case, should be made absolute ; so far as to require Sheriff Mead to bring the surplus money in question,·into court. But as the right to those funds, and whether this is a proper case for this court to direct the application of them, are questions of more importance to the parties, and more difficulty for the court ; and as the argument already had upon those points was had in the absence of one of the members of this court, I think the same ought to stand over for further debate, with leave to the parties to produce additional affidavits and proofs, if they think proper to do so.

FORD, J. concurred.

DRAKE, J. delivered no opinion, as he had been prevented by sickness from hearing the argument.

The following is the entry made in the minutes of the court.

The motion to make the above rule absolute, having been argued at the last term by counsel on both sides, and the court having taken time to advise thereon, it is ordered, that so much of the said rule as required Jacob K. Mead, esq. late sheriff of Essex county, to shew cause why the surplus money in his hands, which was raised on the sale of the defendant's property on execution, in the above entitled cause, should not be paid into this court, be made absolute; and accordingly, it is ordered, that the said Jacob K. Mead, do pay the same into this court on or before the first day of the next term, unless James Richards, in the said rule named, or his attorney, shall consent in writing, that the said surplus moneys shall remain in the hands of the said Jacob K. Mead, until the further order of this court. And it is further ordered, that so much of the said rule, as required cause to be shewn, why the said surplus moneys should not be applied towards satisfaction of certain executions in the said rule

mentioned, be held under further advisement by this court; and that the same may be further debated by the counsel for the respective parties, on the affidavits heretofore taken, or that may hereafter be taken, pursuant to the rules of this court, and for the doing of which, leave is hereby granted, on the first day of next term, or as soon thereafter as the court can attend to the same; and that either party be at liberty to give notice of bringing on such further argument.

CITED in *Evans* v. *Herring*, 3 *Dutch.* 244 ; *Cox et al.* v. *Marlatt*, 7 *Vr.* 390.